**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMY CASERTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-550 |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Schwab, J.

**I.      Introduction**

Plaintiff Amy Caserta ("Caserta" or "plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f).  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings.  (Doc. Nos. 8 & 10).

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the evidence contained in the record, the Court finds that the decision of the Commissioner is "supported by substantial evidence" within the meaning of Section 405(g). Therefore, the Court will deny plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment.  The ALJ's decision will be affirmed, and the Court will enter an order directing that this case be closed.

**II.     Procedural History**

Plaintiff protectively filed an application for SSI on August 12, 2002, alleging disability as of August 16, 2001, resulting from asthma, arthritis, and depression. (R. 105, 172).  Plaintiff's

claims were denied on initial review, and plaintiff requested a hearing. (R. 72-75, 76).  A hearing was held before Administrative Law Judge ("ALJ") Michael F. Colligan on December 18, 2003, during which claimant was represented by counsel and appeared and testified. (R. 34-56).  An impartial vocational expert ("VE") was also present and gave testimony. *Id.*  By decision dated March 26, 2004, the ALJ denied plaintiff's claims, finding that plaintiff was able to perform a range of sedentary work and that jobs suitable for plaintiff, considering her impairments, existed in the national economy.[1] (R.12-19).  The ALJ concluded, therefore, that plaintiff was not disabled under the Act.[2] (*Id.*).

On April 8, 2004, plaintiff filed a Request for Review with the Appeals Council, which was denied, thereby making the ALJ's decision the final decision of the Commissioner. (R. 411-12, 6-7).  Plaintiff then filed an appeal with this Court on October 25, 2005, and, on March 30, 2006, the undersigned granted plaintiff's motion for summary judgment and remanded the case to the Commissioner for further administrative proceedings. (R. 454, 455-71).

The ALJ conducted a hearing on August 16, 2006, during which plaintiff, again represented by counsel, appeared and gave testimony. (R. 591-614).  A VE likewise was present and testified. (*Id.*).  The ALJ issued an unfavorable decision on May 23, 2007, finding that work exists in significant numbers in the national economy that plaintiff is capable of performing despite her limitations, and therefore she is not disabled according to the Act. (R. 430-44).  On March 10, 2009, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 422-24).

Plaintiff subsequently commenced this action against the Commissioner, seeking judicial review of the Commissioner's decision.  Plaintiff and the Commissioner filed cross-motions for

---

[1] For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "The ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

[2] An individual is considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A)(using almost identical language).

summary judgment (Doc. Nos. 8 & 10) which are the subject of this memorandum opinion.

**III.    Statement of the Case**

In his decision, the ALJ made the following findings:

1.      The claimant has not engaged in substantial gainful activity since August 16, 2001, the alleged onset date, or at any time relevant to this decision (20 C.F.R. 416.920(b) and 416.971 *et seq.*).

2.      The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), asthma, degenerative disc disease, arthritis, depressive disorder, and anxiety disorder (20 C.F.R. 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary exertional work that allows the claimant to sit and stand every 10-20 minutes, and that does not involve repetitive bending, the use of foot and pedal controls, and that requires only simple routine repetitive tasks, performed in a low stress work environment that does not involve more than minimal contact with the general public, or exposure to temperature extremes, dust, fumes, or odors.

5.      The claimant is unable to perform her past relevant work (20 C.F.R. 404.1565 and 416.965).

6.      The claimant was born on November 11, 1963, and [was 43 years old when the ALJ's decision was issued].  At all times relevant to this decision, the claimant is considered to be a younger individual within the meaning of the Regulations (20 C.F.R. 416.963).

7.      The claimant has a limited education and is able to communicate in English (20 C.F.R. 416.964).

8.      Transferability of job skills is not material to the determination of disability in this case (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual

3

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.960(c), and 416.966).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since August 12, 2002, the application date, or at any time through the date of this decision (20 C.F.R. 416.920(g)).

(R. 430-44).

## IV.     Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[3] and 1383(c)(3)[4].  Section 405(g) permits a District Court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The District Court's function is to

---

[3]  Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the District Court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
    42 U.S.C. § 405(g).

[4]  Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
    42 U.S.C. § 1383(c)(3).

determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a Court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the District Court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the District Court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

5

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional

6

capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

      Vocational Expert - Hypothetical Questions

      The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[5]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

      Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination,

---

    [5]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically*

9

explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions.  Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected.  *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984);  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).  He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993);  *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v.*

*Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

11

records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . .");

*Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing Court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[6]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[7] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions

---

[6]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[7]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

15

V.      **Discussion**

Plaintiff's challenge to the ALJ's decision is that the ALJ failed to properly weigh the evidence contained in the record and rejected certain medical evidence without providing a reason.  Plaintiff's argument is essentially an attack on the ALJ's RFC assessment.  The Commissioner's position, pared down to its essence, is that substantial evidence supports the ALJ's RFC assessment.

Plaintiff asserts that the ALJ failed to discuss certain medical evidence relating to her asthma and COPD favorable to her claim.  Plaintiff then points out several specific test results, office notes, a note from a consultative examination, and an emergency room visit that the ALJ did not mention in his written decision.  Plaintiff alleges that the ALJ chose to credit evidence in support of a determination of disability but ignored evidence supportive of disability.  Plaintiff contends that this failure constitutes reversible error on the part of the ALJ.  The Court cannot agree.

First, the ALJ conducted an exhaustive analysis of the medical evidence of record, including the evidence relating to plaintiff's asthma and COPD.  In addition to the one paragraph under the step three finding in the ALJ's decision quoted in plaintiff's brief, the ALJ engaged in a lengthy exposition of the medical evidence of record, including references to much of the evidence plaintiff avers the ALJ failed to include.  Indeed, the ALJ mentions Dr. Powell's May 14, 2003, report, contrary to plaintiff's assertion. (*See* R. 440; "When seen by Dr. Powell in May 2003, claimant presented with complaints of coughing at night and reported she continued to smoke.  Dr. Powell's impression was asthmatic bronchitis and prescribed medication for asthma.").  Likewise, the ALJ addressed the pulmonary function tests that plaintiff suggests were absent from the decision. (*See Id.*; "Pulmonary function study results performed in November 2002 and in November 2003 found a moderate obstructive lung defect and chest x-rays were normal."; "Repeat pulmonary functions studies performed in November 2004 and in January 2006 found only a mild obstructive lung defect.").  Further, the ALJ includes in his analysis a report from Dr. Martin referring to plaintiff's March 2005 emergency room treatment which plaintiff contends was absent from the ALJ's decision. (*See Id.*; "When seen in March 2005 it was noted that claimant's asthma was poorly controlled.  Claimant was coughing and wheezing,

16

a chest x-ray found evidence of a 0.5 cm nodule on the right lower lobe, which likely represented a benign finding like a granuloma.").

Plaintiff seems to focus her argument on the ALJ's analysis of her respiratory condition under the step three finding, while neglecting to acknowledge the extensive analysis of this condition under his RFC finding. "The ALJ need not . . . 'adhere to a particular format in conducting his analysis.' The only requirement is that, reading the ALJ's decision as a whole, there must be 'sufficient development of the record and explanation of findings. . . .'" *Rivera v. Commissioner of Social Security*, 164 Fed.Appx. 260, 262 (3d Cir. 2006) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)); (*see also Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (explaining that review is limited to determining whether decision as a whole is arbitrary, capricious, or contrary to law)). The Court finds that the ALJ has properly weighed the evidence relating to plaintiff's asthma and COPD contained in the record and has reached a decision that is supported by substantial evidence.

Plaintiff then attempts the same argument as above regarding the ALJ's analysis of her neck and back pain. Plaintiff asserts that the ALJ failed to mention restrictions placed on her by her treating physician, Dr. Lee, namely that she can sit for 15 to 20 minutes, stand for 20 minutes, and walk for 15 minutes, and that the ALJ instead gave significant weight to the findings of the consultative examiner, Dr. Nino. Plaintiff argues that the ALJ did not provide a reason for rejecting Dr. Lee's restrictions, and that he failed to properly analyze the restrictions caused by her neck and back pain. The Court finds this argument to be without merit.

While it is true that "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)), an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)). During the course of his thorough analysis of the medical evidence encapsulated by the record, the ALJ does discuss Dr. Lee's findings, including the very same reports plaintiff alleges the ALJ failed to consider. (Compare Plaintiff's Brief, p. 13, "The record contains objective evidence of Plaintiff's neck and

17

back pain.  That evidence includes a lumbar MRI, which evidences degenerative changes in the lumber [sic] spine and EMG/NCS studies which were suggestive of a chronic left C5-6 cervical root irritation" with R. 440, "EMG findings of the bilateral upper extremity muscles were suggestive of chronic left C5-6 cervical nerve root irritation without active denervation pattern in the arm muscles.").  Significantly, many of the reports attributed to Dr. Lee by plaintiff were actually performed by Dr. Martin or Dr. Ewald.  Plaintiff does not challenge the ALJ's decision with respect to these two physicians.  More importantly, the ALJ's RFC assessment limited plaintiff to sedentary work "that allows the claimant to sit and stand every 10-20 minutes," among other further restrictions. (R. 437).  This restriction mirrors that of the restriction plaintiff attributes to Dr. Lee.  The Court concludes that the findings and opinion of Dr. Lee was more than adequately analyzed by the ALJ in his written decision.

Plaintiff's argument that the ALJ's decision is internally inconsistent because the ALJ included exertional restrictions in his RFC assessment of plaintiff although he affords significant weight to the opinion of consultative examiner, Dr. Nino, who found no exertional restrictions but only environmental restrictions, is likewise without merit.  The ALJ, while affording significant weight to Dr. Nino's opinion of plaintiff's restrictions, based his RFC assessment on all of the medical evidence contained in the record.  Based upon his review, he found restrictions greater than those found by Dr. Nino, and included these in the RFC assessment.  The Court finds this neither to be internally inconsistent, nor to be error.

Plaintiff invokes her depression as significantly limiting her ability to perform substantial gainful activity in the concluding paragraph of her brief, but advances no argument to identify any error on the part of the ALJ with respect to his decision regarding her depression.  The Court finds that the ALJ's conclusions regarding plaintiff's depression are supported by substantial evidence.

Plaintiff bears the burden of showing that she lacks the RFC ascribed by the ALJ. *See Plummer*, 186 F.3d at 428.  This plaintiff has failed to do.  Additionally, to accept plaintiff's argument would require the Court to reweigh the evidence of record and substitute our analysis for that of the ALJ.  The Court is not so empowered in these proceedings. *See Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

The Court thus concludes that the ALJ's decision provided a thoroughgoing and comprehensive analysis of all the evidence contained in the record, and that his decision is supported by substantial evidence and not unreasonable.  Moreover, the ultimate determination of a claimant's RFC is a responsibility reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.  While an ALJ must provide a logical nexus between the evidence considered and the decision that a claimant is not disabled, it is not necessary to mention every piece of evidence contained in the longitudinal record. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *see also Fargnoli*, 247 F.3d at 42 (explaining there is no requirement that the ALJ discuss or refer to every piece of relevant evidence in the record, so long as the reviewing court can discern the basis of decision).

**VI.     Conclusion**

Because substantial evidence supports the ALJ's decision, plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the administrative decision of the Commissioner will be affirmed.  An appropriate order shall issue of even date herewith.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:    Joanna P. Papazekos
       20 Stanwix Street, Seventh Floor
       Pittsburgh, PA 15222
       *for the plaintiff*

       Jessica Lieber Smolar
       Assistant United States Attorney
       Western District of Pennsylvania
       U.S. Post Office & Courthouse
       700 Grant Street, Suite 4000
       Pittsburgh, PA 15219
       *for the Commissioner*